IRMGARD BERGER and ISOLDE BERGER, by next friend, complainants-appellants,

*v.*

D. FREDERICK BURNETT, executor, et al., defendants-respondents.

---

IRMGARD BERGER and ISOLDE BERGER, by next friend, complainants-respondents,

*v.*

D. FREDERICK BURNETT, executor, et al., defendants-appellants.

[Argued December 3d, 1923.   Decided March 3d, 1924.]

1. The life tenants of the residuary estate, who are dependent minor children of the testator, are entitled to the income from such residuary estate from the date of the testator's death.

2. The residue of a testator's estate is what is left after the payment of *all* debts, legacies, expenses of administration, and other proper charges and commissions.

3. The cases of *Outcalt* v. *Appleby*, *36 N. J. Eq. 73*, and *Green* v. *Green*, *30 N. J. Eq. 451*, criticised.

4. Where there is a gift by a testator of a life interest in the residue of his estate, the interest on debts of the testator accruing after his death should be charged against and paid out of the income of his gross estate.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Church, whose opinion is reported in *121 Atl. Rep. 770*.

*Messrs. Lum, Tamblyn & Colyer (Mr. Ralph E. Lum* on the brief), for the complainants.

*Messrs. Burnett, Sorg, Murray & Duncan (Mr. H. Theodore Sorg* on the brief), for the defendants.

The opinion of the court was delivered by

TRENCHARD, J.

The bill of complaint and answer were designed to obtain the instructions of the court with respect to questions arising under the last will and testament of Carl Berger, who died June 15th, 1920.

In and by his will he directed the payment of his debts and after certain specific devises and bequests gave all the rest, residue and remainder of his estate to his executors and trustees in trust to divide the *corpus* into two equal funds to be known as the Irmgard and Isolde trust funds, respectively, and to pay the net income from the respective funds to his children Irmgard and Isolde for life with remainder over in each case to others. Both children were infants and dependents at the time of testator's death.

Because of the manner in which the assets of the estate had been invested by the testator, it was impossible to liqui-

date the assets and pay the debts for a period of approximately three years following the testator's death.

Complainants, who are the children of the testator and the life tenants of the residue (by next friend), insist that they are entitled to the income on the entire *corpus* of the estate (and the undistributed balances thereof as payments were made therefrom from time to time) accruing since the date of the testator's death.

Defendants, who are the executor and trustees under the will, contend that the complainants are entitled to the income only on the *residue* of the estate from the testator's death, and that that residue consists of what is left after payment of debts, legacies, administration expenses, &c., and is to be determined in the manner set forth in the answer.

The conclusions of the court below agreed with defendants' contention on the question of law as to what constitutes residue but differed on the question of fact as to how the residue was to be calculated.

Complainants appeal from the entire decree.

Defendants appeal only from that part of the decree which fixes the mathematical basis for calculating the residue as a matter of fact.

No doubt the life tenants of the residuary estate, being dependent minor children of the testator, are entitled to the income from such residuary estate from the date of the testator's death. *Welsh* v. *Brown, 43 N. J. L. 37.*

The question still remains, however, as to what constitutes the residue of the estate.

In *Frelinghuysen* v. *New York Life Insurance and Trust Co., 31 R. I. 150; 77 Atl. Rep. 98,* the court said: "There could, of course, be but one residue—that which was left after the payment of debts, legacies, specific and general, and satisfying the other specific gifts."

In re *Rowland's Trustees, 87 N. J. Eq. 307; 101 Atl. Rep. 52,* Vice-Ordinary Backes, in commenting on the fact that the "residue" of the estate cannot be deemed to include the amount which is subsequently required to pay debts, legacies and other charges, says. "It is clear that the tenant for life

[of the residue] ought not to have the income arising from what is wanted for the payment of debts because that never becomes residue in any way whatever."

It seems perfectly clear that as a matter of law the residue of the testator's estate is what is left after the payment of *all* debts, legacies, expenses of administration and other proper charges and commissions.

It remains to consider the statement in the case of *Outcalt v. Appleby, 36 N. J. Eq. 73,* which counsel for complainants quotes as follows:

"It is the rule that where the *residuary* estate is given to a legatee for life, the interest which accrues *thereon* from the time of the death of the testator, shall, in the absence of any direction to accumulate or any other direction to the contrary, and *if not required for the payment of debts and legacies,* go to the life tenant."

Counsel argues that the court is pointing out the one case where *income on the residuary estate* may be applied to the payment of debts and legacies. It does seem that such statement is capable of that construction. It is, however, merely *dictum.* Moreover, it is erroneous, as appears upon examination of the authorities on which it is based. We find no case in this country or England which ever actually applied any such rule that the *income* on the *residue* can be applied to payment of debts of the testator. It is a self contradiction since "residue" means what is left *after* debts are paid and hence, there would be no debts toward the payment of which the income on such residue could be applied.

Now, by reference to the opinion in *Outcalt* v. *Appleby* we see that the court there bases that statement on two authorities: *2 Rop. Leg. 1322; Green* v. *Green, 30 N. J. Eq. 451.* Reference to *Green* v. *Green* discloses that there, likewise, the point was not in issue and there, too, the court gives as its authority *2 Rop. Leg. 1322.* Referring to *Rop. Leg. 1322, 1332,* we find that the author made that statement on the basis of three English cases, namely, *Hewitt* v. *Morris, 1 Turn. & R. 241; La Terriere* v. *Bulmer, 2 Sim. 18,* and *Angerstein* v. *Martin, 1 Turn. & R. 233,* and the last named

being the original authority for both *Hewitt* v. *Morris* and *La Terriere* v. *Bulmer.* In the original case of *Angerstein* v. *Martin, supra,* the only statement made by Lord Eldon having anything to do with the point, and which doubtless is the source of Mr. Roper's inaccurate conclusion, is the following: "I think, with respect to the interest of so much of the personalty, bearing interest, as is not necessary to be applied for the payment of debts or legacies, the tenant for life is entitled to it from the death of the testator." Clearly, what Lord Eldon is there saying is that the interest on so much of the *personalty* (*i. e., corpus*) *as is not required for the payment of debts or legacies* goes to the life tenant. In other words, the court did not say that the *income* is to be applied to the payment of debts, but so much of the personalty—*corpus* itself—as is needed for the payment of debts is first to be applied and that then the income on the residue goes to the life tenant. That is exactly in accord with the views of the court below on that phase of the instant case and in harmony with our own views upon that point.

But the mathematical formula adopted by the court below is a new method of calculating residue in which we cannot concur.

In calculating residue as a practical matter we believe that due consideration must be given to the complications of present-day conditions. To the complications inherent in present-day trusts themselves must be added the complications of recent federal and state inheritance taxes, and federal income taxes, and the necessity of the disposal without sacrifice of widely differentiated investments made by testators, from all of which a situation often results where instead of winding up the estate within the normal period of one year following testator's death, several years may necessarily pass before final accounting, taxing the ability of the most experienced executor.

In view of the fact that no pronouncement has ever been made on the subject by this court, there is nothing to prevent the adoption of a method of calculation that is both simple and fair in view of present-day conditions.

Now it is an elementary proposition that where there is a gift to B for life of the equity of redemption of real estate, that B, the life tenant, is entitled to the income from the life estate subject to payment of interest on the encumbrances. And ordinarily a life tenant of property subject to encumbrances must keep down the interest accruing on such encumbrances during the continuance of his estate, at least to the extent of the income or rental value of the property.

Similarly, where there is a gift by a testator of a life interest in the residue of his estate (i. e., his equity after payment of debts, &c.) the interest on debts of the testator accruing after his death should be charged against and paid out of the income of his gross estate.

Such a rule would require no complicated calculations. If the income on the gross estate for a given period amounted to $5,000, and the interest on the debts, &c., for the same period amounted to $2,000, the life tenant would receive the difference of $3,000 as income for that period.

Again, the life tenant would always know exactly what income he could count on, for it could be determined at a moment's notice what interest was accruing on the debts and legacies.

Under the method of calculation adopted by the court below, it is first necessary to ascertain what the *total* debts, legacies, administration expenses, &c., will amount to before the ratio can be ascertained for determining what portion of income shall be applied toward the debts, &c. Under the method herein adopted, no such delay would ensue. It would be applicable whether the estate were wound up in one year or five years. As each payment was made from day to day on account of debts &c., the interest accrued thereon since testator's death would be charged against the income accrued on the total estate. The balance would go to the life tenant.

It might be that in some isolated instance either the life tenant or remainderman might pay a larger sum than under other methods. For example, if the gross estate produced less income than the debts carried interest, the life tenant

would temporarily suffer until the difference were made up. On the other hand, if in a given case the debts or legacies carried no interest, then the life tenant would be the gainer, for he would then get all·the income on the gross estate. Any hardship that might be caused in such occasional instances, however, would be more than compensated for by the facility of handling all estates however involved and the certainty at all times on the part of the life tenant as to just what income he might expect.

The above method was adopted in *Neide's Estate, 22 Pa. Dist. 563* (overruling the earlier case of *Patterson's Estate, 3 Pa. Dist. 796*). In *Neide's Case* the testator left the residue of his estate to A for life. The estate consisted of $235,000 in securities which the testator had pledged for loans. It was held that the life tenant must pay the interest on the loans out of the income on the securities.

We believe that the foregoing observations in effect dispose of every question properly presented by the two appeals from the decree below.

The result is that the decree below must be modified in accordance with the views herein expressed, and as so modified, will be affirmed.

*For affirmance and modification* (both appeals)—THE CHIEF-JUSTICE, TRENCHARD, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, GARDNER, VAN BUSKIRK, CLARK —10.

*For reversal*—None.