In the Matter of the Estate of ARTHUR H. ALLEN, Deceased.

Surrogate's Court, New York County, July 8, 1927.

**Wills — legacies — agreement between legatee and executor to transfer securities of value of legacy is valid — executor not surcharged with increase in value between agreement and transfer — remainders — executor directed to pay share of remainder to any child born after death of testator as soon as convenient — said child had vested remainder in share subject to trust.**

An agreement entered into between an executor and a legatee who was bequeathed a legacy of $40,000 to transfer securities, constituting non-legal investments, of the value of the legacy, is valid. The mere fact that the securities increased in value between the time that the agreement was made and the time of the actual transfer does not make the executor liable for the amount of the increase.

A provision in the will creating a trust directed that in case any child should be born to a daughter of the testator after the testator's death the share in the remainder set apart for such child should be paid as soon as convenient, gives to a child born after the testator's death a vested remainder in his share of the principal subject only to the trust.

ACCOUNTING proceeding by executor involving construction of will.

*Harold Swain,* for the petitioner.

*Irving J. Joseph,* special guardian.

*Robert W. Cromley* of counsel.

O'BRIEN, S. The testator died on April 20, 1923, and letters testamentary were issued on his estate on May 18, 1923. He left him surviving a daughter, Agnes G. C. Nash, who at the time of his death had four children, James N. Nash, Elizabeth S. Nash, Henrietta L. C. Nash and George R. H. N. Nash. After his death a fifth child was born to his daughter Agnes G. C. Nash, named Philip Nash. Two questions have been raised upon this accounting. The first is raised by the objection of the special guardian, viz., that the executor erred when he turned over to Agnes G. C. Nash, testator's daughter, as and for her general legacy of $40,000, securities worth at the time of delivery $45,718, and that the executor should be surcharged in the amount of $5,718. The facts out of which this situation developed are as follows: Testator by the 2d paragraph of his will gave a general legacy of $40,000 to

said daughter. At the time of testator's death, April 20, 1923, said daughter, Mrs. Nash, was in France. She wrote to the executor stating, in substance, that it would be a waste of money to sell out the securities at that time and requested the executor not to sell them in order to pay this legacy in cash but to turn the same over to her in kind. At the time of the receipt of her request the value of these securities was $40,014.38, which was but $14.38 over the amount of the general legacy. By reason of delay in effecting the actual physical transfer on the books of the various companies of these securities, delivery of the same was not made to her until April 16, 1924. At that time the value of the securities was $45,718, an increase of $5,703.62. The special guardian contends on behalf of his infants that the accountant should be surcharged with this extra payment of $5,703.62, constituting the increase in the value of the securities from the time of the death of the testator to the time of the delivery of the same. He further contends that any delivery of securities instead of cash toward the payment of this legacy should have been to the extent of $40,000 only, the amount of the general legacy, and not in securities of a value at the time of delivery in excess of the same. The executor assumes this attitude in defense of his conduct with respect to this legacy: (1) That these securities being non-legal investments, it was his duty to dispose of the same at the earliest possible date after testator's death, to hold himself harmless from any loss which the estate might suffer by a depreciation in value of these non-legal securities; (2) that before he had turned the latter into cash he received the request from testator's daughter above set forth; (3) that it was entirely proper to comply with said request to the extent of the amount of her legacy and to set aside such of the securities as equaled in value, as of that time, the amount of her legacy; (4) that if such securities had not been retained but sold at the then market, the proceeds would have been $40,014.38, which is in excess of the amount of said legacy by $14.38; (5) that properly and within the line of his duty he entered into an agreement with said legatee by which she bound herself to accept said securities in full for her legacy; (6) that in this agreement said legatee speculated with their value but executor did not; and that had these securities, set aside as representing her legacy, depreciated in value she and not the estate would have suffered the loss while if they appreciated in value, as in fact they have, due to an unavoidable delay in making the actual delivery to her, she would be and is entitled to the increment in the value of the same. Under all the circumstances that surrounded the payment of this legacy there was nothing improper in the conduct of the executor and the

objection of the special guardian is, therefore, overruled. The second question raised relates to paragraphs " third " and " fourth " which read as follows:

" *Third.* I give and bequeath to my executor hereinafter named, the sum of Forty thousand ($40,000) Dollars, IN TRUST, nevertheless, to invest the same and keep the same invested, and after paying the necessary expenses of maintaining this trust, to pay the net income therefrom to my cousin, MAY CONSTANCE ALLEN, in semi-annual payments for and during the term of her natural life, and upon the further trust, upon the death of said May Constance Allen, to divide the principal of said trust estate *into enough shares so that there shall be one share for each child then living of my daughter, Agnes G. C. Nash and her husband, James R. Nash and one share collectively for the issue of any deceased child,* and to · pay over to the issue of any deceased child the share so set apart for such issue, and to hold the respective shares so set apart for each living child until said child shall attain the age of twenty-five years, and during the minority of such child, to apply the net income or so much as is necessary to the support and maintenance of such child and upon the arrival of such child at the age of twenty-one years to pay to such child the accumulations of income and thereafter to pay the whole net income to such child, until its arrival at twenty-five years of age and then the principal shall be paid to such child. *Provided, however, that in case any child shall be born to my said daughter and her husband after my death the share so set apart for such child shall be paid to such child as soon after my death as conveniently can be done.* It being my intention that the trust property for each trust shall be treated as having been vested in the child for whom the trust is set up and in case of the death of such child before arriving at the age of twenty-five years, the trust property shall pass under the will of such child or by descent or distribution to the heirs and next of kin of such child."

" *Fourth.* All the rest, residue and remainder of my estate, both real and personal, of every kind, nature and description and wherever situate, I give, devise and bequeath to my executor hereinafter named, in trust, nevertheless, to invest the same and keep the same invested, and after paying the necessary expenses of maintaining this trust, to pay the net income therefrom to my daughter, Agnes G. C. Nash, in semi-annual payments for and during the term of her natural life, and upon the further trust upon the death of my said daughter, to divide the principal of said trust estate into shares so that there shall be one share for each child then living of my said daughter, Agnes G. C. Nash and her husband James·R. Nash and one share collectively for the issue

MATTER OF ELIAS. 327

Misc. 327]     Surrogate's Court, New York County, August, 1927.

of any deceased child, and to pay over to the issue of any deceased child the shares so set apart for such issue, and to hold the respective shares so set apart for each living child until said child shall attain the age of twenty-five years, and during the minority of such child, to apply the net income or so much as is necessary to the support and maintenance of such child, and upon the arrival of such child at the age of twenty-one years to pay to such child the accumulations of income and thereafter to pay the whole net income to such child until its arrival at twenty-five years of age, and then the principal shall be paid to such child. Provided, however, that in case any child shall be born to my daughter, and her said husband after my death the share so set apart for such child shall be paid to such child as soon after my death as conveniently can be done. It being my intention that the trust property of each trust shall be treated as having been vested in the child for whom the trust is set up and in case of the death of such child before arriving at the age of twenty-five years, the trust property, shall pass under the will of such child or by descent or distribution to the heirs and next of kin of such child."

Instructions are asked as to the proper method of disposing of that portion of the residue which is assigned to the child of Agnes G. C. Nash (viz., Philip Nash) who was born after the testator's death. Testator anticipated this contingency which has presented itself and in the following language has provided for said child: " *Provided, however, that in case any child shall be born to my said daughter and her husband after my death the share so set apart for such child shall be paid to such child as soon after my death as conveniently can be done.*"

I, therefore, hold that this child, Philip Nash, had a vested remainder in the shares set apart for him, one subject to the life estate of May Constance Allen under the 3d paragraph of the testator's will, and the other subject to the life estate of his mother, Agnes G. C. Nash, under the 4th paragraph of the will.

Submit decree on notice accordingly.