William L. Brown died July 6th, 1930, leaving a will dated June 26th, 1930, duly admitted to probate in this court, under which letters testamentary were granted to Mary S. Brown (his widow), and Frank G. Wild, the executors and trustees therein named. He left him surviving, besides said widow, two sons and a daughter.
By the fifth clause of his will the testator gave to said trustees $35,000 in trust, to invest; to pay the income thereof to his son Robert S. Brown quarter-yearly; on said son becoming thirty-five years of age, to pay him $15,000 from principal and on his becoming forty years of age to pay him the balance of principal. Provision is made that should he die before becoming thirty-five or forty years of age, the principal shall go to his issue and in default of issue, to his brother and sister, or their issue.
By the sixth clause the testator gave to said trustees $35,000 in trust for his son William L. Brown, Jr., under provisions as to payment of income and principal similar to those contained in the fifth clause. *Page 500 
By the seventh clause the testator gave to said trustees $35,000 in trust, to invest and to pay the income to his daughter Marion S. Brown quarter-yearly for life and upon her death, he gave "the same" (probably meaning principal) to her issue. Provision is made for the distribution of this trust fund in case of her death without issue surviving her.
By the eleventh clause the testator gave the residue of his estate to said trustees, to invest; to pay the income to his wife Mary S. Brown quarter-yearly for life and upon her death he gave the income to his three children for life and upon their death the principal to their issue.
The executors present their petition wherein they state that because of delay in securing an assessment of the estate of the deceased, by the transfer inheritance tax department of this state for inheritance tax purposes, they were unable to ascertain and pay the amount of tax until November, 1931, and that it was not possible for them to set up the trusts under the fifth, sixth and seventh clauses of the will until after such payment; that the assets of the estate consist of almost eighty per cent. in securities, which securities at the end of a year after the testator's death, had depreciated in value and since July 6th, 1931, have further depreciated and if sold at present market prices for the purpose of setting up the three trusts in cash, considerable loss will be suffered by the residuary estate; that as trustees they desire to receive from themselves as executors, securities owned by the estate in lieu of cash at a valuation as of July 6th, 1931, for the purpose of setting up the three trusts, but the beneficiaries object to setting up the trusts in securities instead of cash and they pray for instructions in the premises. The respondents are the testator's three children and the minor children of Robert S. Brown and William L. Brown, Jr., a guardian ad litem having been appointed for the minors.
The petition was referred to a master for hearing and report. He has filed a report finding that the executors and trustees have discretion to set up the trusts in securities and that said trusts should be so set up. He also finds that the trusts should have been set up at the end of one year after *Page 501 
the testator's death, that is to say on July 6th, 1931, but because of the delay incident to inheritance tax assessment, the trustees were prevented from so doing and that they should now set up said trusts in said securities valued as of July 6th, 1931. To his report William L. Brown, Jr., and Robert S. Brown filed exceptions, in substance (1) that the will gives the executors and trustees discretion whether to set up the trusts in securities or cash and therefore the master should not have reported that the trusts should be set up in securities; (2) that if the trusts are set up in securities, the securities must be valued as of the date the trusts are established.
But little attention need be given the first exception because under Comp. Stat. p. 2271 § 34, executors and trustees may continue to hold securities which have come to their hands as investments of the testator, good faith and reasonable discretion only being required of them, and clause twelve of the will specifically gives the trustees discretion to "retain as investments of any of said trusts, any of the property and securities which I may own at the time of my death * * * but any new investments of any of said trust funds shall only be those authorized by law." This clause contemplates that the executors may exercise their discretion to turn over to themselves as trustees "and retain," such securities as came to their hands as executors. It seems, too, the sensible and fair thing to do, rather than to sell securities in the present state of depressed values and immediately invest the proceeds in other securities which possibly will have no more stable value than those sold. The executors and trustees are authorized by Comp. Stat. p.2267 § 28 and P.L. 1915 p. 184 § 9, to apply to the court for instructions as to such matters as are set out in their petition (In re Ungaro, 88 N.J. Eq. 25; Miers v. Persons,92 N.J. Eq. 17) and the master was correct in reporting that they have, as trustees, power to set up the trusts in securities owned by the testator at his death.
Considering now the second exception. The testator owned but little real property his estate consisting mainly of personalty inventoried at $357,133.48. His testamentary scheme *Page 502 
as disclosed by his will, was to provide out of his personal estate, first, definite sums of money for his children and then for his widow by giving her the income for life on the balance then remaining. To his children he gave, under certain clauses, definite legacies outright and by the clauses under consideration and still other clauses, further legacies on which he deferred payment to them by setting them up as trusts. It may be true that after making provision for his children, he believed that the value of the residuary estate would be higher than now appears, and yet the economic depression from which we are suffering had started six months prior to the date of his will and the prices of stocks, bonds and other securities were then still falling.
When a will fixes no time for payment of legacies, executors are allowed one year after probate within which to pay. Comp.Stat. p. 3087 § 1. Payment of legacies is demandable at the expiration of the year and if not then paid interest begins to run, even though there may be a reasonable excuse for delay in payment. Davison v. Rake, 45 N.J. Eq. 767; Ashton v.Wilkinson, 53 N.J. Eq. 227; O'Leary v. Smock, 95 N.J. Eq. 276.
The sums bequeathed under clauses five, six and seven are payable to the trustees within the same time that legacies are payable to individuals. Had these legacies been given the beneficiaries outright and remained unpaid, they could not be required to accept payment now in securities valued as of July 6th, 1931, and the executors would be required to sell securities at the present market and pay such legacies, with interest, in cash. The beneficiaries under these trusts have the status of legatees and are entitled to have the full sums nominated in the will paid to their trustees when such payment is made.
The reason assigned by the executors for failure to set up their trusts by July 6th, 1931, is that they encountered difficulty in satisfying the state and federal taxing authorities as to the value of the estate for the purpose of transfer inheritance and estate tax purposes. But this was no fault of the beneficiaries and the consequences of the delay should not be visited on them. The state and federal tax returns were filed *Page 503 
in February, 1931, and it is alleged that the delay in levying the tax was due to the requirements of the taxing authorities for further information concerning values placed by the executors on some of the estate property. I will not say that these requirements could have been met more speedily but the executors do not show and it is not perceived why such requirements prevented setting up the trusts by July, 1931, or a short time thereafter. The thirteenth clause of the will directs that all state and federal legacy, inheritance and transfer taxes shall be paid from the residuary estate so that the beneficiaries under the trusts shall receive the full benefit of the provisions of the will made for them, without any deduction for such taxes; therefore these beneficiaries were not, so far as these trusts were concerned, interested in or affected by the ascertainment of such taxes and it seems to me that the trusts could have been set up notwithstanding such tax had not been levied and paid. If, in July, 1931, the executors were in doubt as to their right to use estate securities for the trusts, they could have made earlier application to this court for instructions.
The testimony before the master shows the estate securities have greatly depreciated in value; that their value is now less than in July, 1931, and if the trusts are now set up with securities valued at $35,000 as of July 6th, 1931, the present value of each trust will be between $20,000 and $25,000. One of the beneficiaries reached the age of thirty-five last September and he was then entitled to be paid $15,000 from his trust fund. Should his trust be now set up with securities valued at $35,000 as of July 6th, 1931, and he be now paid $15,000 therefrom by a sale of securities, there will remain in his trust securities having a present value of between $5,000 and $10,000, with which to pay him $20,000 which the will directs he shall receive five years hence.
I am of the opinion that while the executors may transfer to themselves for each trust, estate securities of the value of $35,000 such value must be determined as of the date of setting up each trust and I disapprove the master's finding that such value should be fixed as of July 6th, 1931. After receiving *Page 504 
such securities, the trustees will be required to exercise good faith and reasonable discretion in determining whether to continue to hold them. The residuary estate will, of course, suffer — the widow will receive less income therefrom for life and upon her death, those who are interested in the remainder (among whom are the beneficiaries of the trust under consideration) will receive less from the residuary estate. *Page 505