**UNITED STATES v. BRITTEN et al.**

No. 9212.

Circuit Court of Appeals, Third Circuit.

Argued Feb. 20, 1947.

Decided May 21, 1947.

Louise Foster, Asst. to Atty. Gen. (Sewall Key, Acting Asst. Atty. Gen., and A. F.

Prescott, Sp. Asst. to Atty. Gen., Edgar H. Rossbach, U. S. Atty., and Edward V. Ryan, Asst. U. S. Atty., both of Newark, N. J., on the brief), for appellant.

Orlando H. Dey of Rahway, N. J., for appellees.

Before MARIS and McLAUGHLIN, Circuit Judges, and FOLLMER, District Judge.

McLAUGHLIN, Circuit Judge.

This is an income tax matter in which suit was brought to recover certain amounts paid under protest for deficiency assessments. The District Court on motion for summary judgment decided in favor of the taxpayers [1] and the government appeals.

The executors of the estate of Eric T. Franzen, deceased, were also named as trustees in the will which directed that the residue of the estate be held in three trusts. On this appeal we are concerned with sales by them in 1935, prior to the final settlement of the estate, of blocks of stock in two different companies. The main question is whether the gains from those sales are taxable against the trusts as held below or against the estate under Section 161 of the Revenue Act of 1934 as the government asserts.[2]

Mr. Franzen died on August 15, 1933, resident in Essex County, New Jersey, where his will was probated August 28, 1933. By the seventh paragraph of the will, after specific bequests and devises, he left the residue of his estate "to my executores * * * in trust, nevertheless, * * *" to be divided into two equal shares, one-half to his widow and the other half in equal parts to his two children. Then followed powers to the executors to invest the shares of the beneficiaries and to distribute the income as provided. The eighth paragraph among other things authorized "my executors to retain any investments made by me in my lifetime and the securities representing the same forming part of my estate and to deliver the same to themselves as trustees, * * *."

The named executors and trustees, E. Frank Britten, Jr., and Savings Investment Trust Company, entered upon their duties immediately after the probate of the will. These included management of the Shu-Milk Products Corporation which had been largely owned and controlled by decedent. In January and February 1935, during the course of an efficient administration of the estate assets, they sold stock in that corporation and in another company for a large profit. On October 21, 1935, they filed an inventory and account with the Surrogate of Essex County. The inventory was made by them as executors and by appraisers. It included the two mentioned blocks of stock. The account is stated to be that of

---

[1] 60 F.Supp. 991; motion to reconsider denied with opinion 63 F.Supp. 478.

[2] 48 Stat. 680, Revenue Act of 1934, c. 277:

"Sec. 161. Imposition of Tax.

"(a) Application of tax. The taxes imposed by this title upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

* * * *

"(3) Income received by estates of deceased persons during the period of administration or settlement of the estate; and

* * * * *

"(b) Computation and payment. The tax shall be computed upon the net income of the estate or trust, and shall be paid by the fiduciary, except as provided in section 166 (relating to revocable trusts) and section 167 (relating to income for benefit of the grantor). * * *" 26 U.S.C.A. Int.Rev.Code, § 161(a) (3) (b).

Sec. 162. Net Income.

"The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual except that—

* * * * *

"(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction, shall be included in computing the net income of the legatee, heir, or beneficiary." 26 U.S.C.A. Int.Rev.Code, § 162(c).

the executors and trustees but the supporting affidavits were by the appellees as executors. Various claims were listed for which allowance was prayed. The accountants charged themselves as executors with the assets set out in the inventory and with income received from September 8, 1933, to September 19, 1935. All changes in the investments made by the accountants "since their qualification as executors" were detailed and embraced the Shu-Milk stock sale. The agreement for the sale of that stock, executed January 31, 1935, showed Britten and the bank participating as executors of the Franzen estate and signing as such executors. The account was approved by the Essex County Orphans Court on November 26, 1935, with commissions to the appellees as executors and a counsel fee to their attorney. The commissions and counsel fee were claimed as deductions on the federal estate tax return and were so allowed. On April 14, 1939, appellees filed their first account as trustees. This covered the period from September 30, 1935, to September 23, 1938. On November 18, 1941, the appellees as trustees petitioned for commissions and counsel fees. In their petition they admitted that prior to October 25, 1938, the trust funds had not been segregated but said that such segregation had been made on that date. There were various payments for federal and state taxes, filing and counsel fees by the appellees in their administration of the estate.[3]

Referring to the stock in question, the petition and complaint alleges that during 1935 "Plaintiffs sold a portion of the corpus of the said three trusts and realized therefrom a capital gain." It then goes on to say "Said capital gains were not distributed to the beneficiaries of said trusts but were retained and invested by the plaintiffs in accordance with the terms of said trusts."

The issue was submitted as a question of law to the District Court on the motion for summary judgment and so passed upon by that Court which made no findings of fact. The Court concluded, "that by his will the testator intended that his widow and children would be entitled to the income of the trusts from the date of his death," therefore that "the equitable titles to the respective trusts actually vested in the cestuis qui trustent immediately on the testator's death" and that "the trustees then also became vested with the *legal* titles to the trusts at the death of testator." A supplementary opinion by the Court on motion to reconsider reiterated this. On this appeal, appellees make the same contention as below, saying in their brief that "Physical segregation and division of the trust assets among the three trusts is an administrative matter having no bearing upon the creation of the trusts and the time when they took effect. The trusts were created by the will. They took effect at testator's death because that was the testator's intent as expressed in his will and interpreted by the courts." Whether stronger factual evidence in support of appellees' theory as to the profits from the stock sales could have been produced and, if so, the effect thereof, is not before us and not considered.

## I.

 If the trusts did take effect under New Jersey law immediately upon the death of the testator, the decision below allocating the tax to the trusts is proper. Helvering, Commissioner v. Stuart, 317 U. S. 154, 63 S.Ct. 140, 87 L.Ed. 154. Our examination of the New Jersey cases indicates the contrary. In passing it should be observed that federal tax law would frown on such a result, giving trusts a wholly illogical tax advantage over ordinary bequests which would have to submit to administration and consequent taxation.[4]

---

[3] The facts stated are from the government notices to admit and the documents attached thereto, to all of which there was no objection below.

[4] For example: Testator wills one-half of his estate to A, and one-half to B to hold in trust for A. If the rule argued for were established the half to A in fee would be subject to this tax and would not vest in A until the completion of administration, while the half in trust would immediately be immunized for A's benefit. From the tax viewpoint, this would be absurd. Even from the property viewpoint, no reason appears for so sanctifying a trust.

924

Aside from that, New Jersey law does not support the proposition.

The most the New Jersey cases can be said to hold is that a residuary legatee or beneficiary is entitled to income accruing from the date of death. That rule and its reason are set forth in Van Blarcom v. Dager, Court of Errors and Appeals, 1879, 31 N.J.Eq. 783, at page 794:

"At what time did the income to the widow begin to accrue? It was decreed by the vice-chancellor, to begin at the expiration of one year from the testator's death. To the correctness of the decree in this particular, I am unable to assent. It is grounded on the general rule, that legacies bear interest from the time they are payable, and upon the statutory provision, that the executor or administrator shall have a year after probate in which to pay legacies, where no time for their payment is fixed by the will. This general rule has been expressed and applied in cases adjudged in this state. [Citing cases.]

\* \* \* \* \* \*

"In all these cases, the legacies were specific sums, or the interest of such sums, and differ from bequests of the residuary personal estate made to a legatee for life. This distinction is explained and enforced by the chancellor in the recent case of Green v. Green, 3 Stew., 30 N.J.Eq., 451, 452, in which the opinion was delivered after the decision of the present case. The rule that, where the residuary personal estate is given to a legatee for life, the interest thereon accruing from the testator's death, shall, in the absence of any direction to accumulate, go to the tenant for life, is declared, by the chancellor, to be established. It is placed, not on the presumption that the life interest was given for support, but on the equity which seeks, as between the life tenant and the remainderman, to give to each his due. To give the interest for the first year to the remainderman by treating it as part of the principal, is correctly said to be injustice to the tenant for life."

Plainly the above case decides that the right to the income is founded not on the vesting of the trust but on the equity between beneficiary and remainderman. No

cases in New Jersey (except those discussed below) have been found stating that testamentary trusts vest at the testator's death. See Green v. Blackwell, 32 N.J.Eq. 768, 773; Berger v. Burnett, 95 N.J.Eq. 643, 648, 123 A. 879; Gaede v. Carroll, 114 N.J.Eq. 524, 530, 169 A. 172; Gates v. Plainfield Trust Co., 121 N.J.Eq. 460, 470, 191 A. 304; First National Bank of Toms River v. Levy, 123 N.J.Eq. 21, 29, 195 A. 820, together with the cases discussed in those cited. Berger v. Burnett, supra, one of the decisions strongly stressed by the appellees, would seem expressly to hold that a residuary trust cannot come into existence until after administration, the Court saying at page 646 of 95 N.J.Eq., at page 880 of 123 A.: "It seems perfectly clear that as a matter of law the residue of the testator's estate is what is left *after* the payment of *all* debts, legacies, expenses of administration, and other proper charges and commissions." (Emphasis added to "after".)

In Re Hibbler's Estate, 78 N.J.Eq. 217, 219, 78 A. 188, special circumstances were held to make the trustee such at once, at least permitting the inference that the rule is otherwise where those circumstances are absent. There is no basis for imputing special circumstances here for the only language in the will bearing on the testator's intention in this regard is that quoted above, at the very beginning.

The cases so far dealt with are those cited by the appellees to substantiate their position. However, a recent line of cases in New Jersey, not at all adverted to by either party or by the District Court, affirmatively establishes that a testamentary trust does not vest immediately upon the death of testator, but requires the occurrence of further events.

The first case so to hold is In re Brown's Estate, Prerogative Court, 112 N.J.Eq. 499, 164 A. 692. There was involved in it a number of complex testamentary trusts. The testator left most of his property in the form of stock and his demise coincided with the beginning of the depression. The executors and trustees (the same parties) thought they should hold on to the stock and hoped for a business revival, setting up the trusts in kind. The beneficiaries

wanted the corpus set up in cash. Instructions were asked; the Vice Ordinary held with the trustees. Due partly to the confused state of affairs and partly to tax delays, the statutory year (R.S. 3:26–1, N. J.S.A.) passed without distribution of the estate or the setting up of the trusts. The delay was held not excused by those factors. The legatees and beneficiaries should, said Fielder, Vice Ordinary, have come into the enjoyment of the interests at the end of the year. After discussing the rights of legatees in this regard he stated at page 502 of 112 N.J.Eq., at page 693 of 164 A.: "*The beneficiaries under these trusts have the status of legatees* and are entitled to have the full sums nominated in the will paid to their trustees *when* such payment is made." (Emphasis added.)

Girard Trust Co. v. Mueller, 125 N.J.Eq. 597, 7 A.2d 413, presents facts not unlike the instant case. It concerned testamentary trusts in which the testator had given the executors and trustees a wide discretion as to disposal of stock destined for the trust corpus. The market being uncertain, sale of the stock was delayed until all parties involved executed an agreement concerning it. On page 610 of 125 N.J.Eq., at page 420 of 7 A.2d the Vice Chancellor said: "These shares of stock did not become assets of the trusts until the trusts were set up under the decree of distribution, and they were evaluated at that time by virtue of the agreement. The transfer of the stock by the executors to the trustees took place in August of 1922 after the decree of distribution; prior to that time the dividends on the stock were collected by the executors and carried on their books as income of the estate. To all intents and purposes, taking over this stock for the respective trusts was analogous to a purchase for that purpose, and until that time the stock remained a part of the general estate upon which Mrs. Zurbrugg, as well as any other preferred legatees, had a prior claim. No decision was reached by the trustees to take over the Watch Case Company stock until the time the agreement was executed and the decree of distribution made, and it was undoubtedly the intention of the testator to have his executors and trustees exercise the widest discretion in connection with this stock because of his interest in the Watch Case Company and his desire to promote its best interests and preserve his estate from loss by reason of a premature or unfavorable sale of this stock. In the case of In re Ward's Estate, supra, [121 N.J.Eq. 555, 558, 192 A. 68], the Court said with reference to the time of setting up certain trusts, 'The presumption is that the several securities now found in the two trust funds became part of the trust and were accepted by the trustee for that purpose when the shares were actually transferred to the trust company as trustee. Or to state the converse, as long as the shares stood in the name of the decedent or his executor, they were presumably part of his general estate.'"

Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457, does not hold differently, even presuming that it could establish the estate law of New Jersey. The Supreme Court does say, 280 U.S. at page 334, 50 S.Ct. 115, 74 L.Ed. 457, that after distribution, title to personal property in the legatees dates back to testator's death. But it also states, at the same page, that until distribution and immediately upon testator's death, title vests for "proper administration" in the executor or administrator. If either the dating back, or the legatee's immediate right to it, voids income taxation of testamentary trust income as appellees here claim it does, then it must also void such taxation upon any income during administration. It is a trifle late in the history of income tax to discuss the novel contention advanced by appellees. Cf. Hallowell v. Commissioner of Internal Revenue, 3 Cir., 160 F.2d 536.

But if it has not been shown that testamentary trusts vest, for income tax purposes, at the death of the testator, might it not still be that the income from the stock sales in this case was trust—and not estate—income? Could it be that appellees were, as to these sales, trustees only, and not executors?

New Jersey law can sustain such a distinction in certain cases. As it is put In re Steelman's Estate, Prerog.1917, 87 N.J. Eq. 270, at page 273, 99 A. 612, 614: "It has been specifically determined by our court of appeals that where the same per-

son is an executor and a trustee under a will, he cannot, in his administration of any part of the property committed to him, be said to act in a duplex character; that 'each act done must, in contemplation of law, be that of an executor or that of a trustee.' Pitney v. Everson, 42 N.J.Eq. 361, 7 A. 860."

In the Steelman matter, the power of sale over certain property was by the will given specifically to the trustee, and so it differs materially from the case at bar. Cf. Ayres v. Shepherd, 64 N.J.Eq. 166, 167, 53 A. 690; 1 Scott on Trusts, Section 6.

■ It is alleged that the records kept of the dual administration establishes the fiduciaries as trustees under this rule. There was no evidence presented below as to this question. However, in their brief, the fiduciaries set out what they say to have been their bookkeeping plan. This seems to be a careful one, but by appellees' own presentment the books kept are shown to have contained, indiscriminately, accounts of their activities in both capacities. Even if they had kept separate records, "a mere bookkeeping scheme" would not have been enough to determine in which fiduciary character they acted. In re Hibbler's Estate, supra, 78 N.J.Eq. at page 220, 78 A. 188. And though the system used for bookkeeping may have followed that suggested in Berger v. Burnett, supra, for determining the "residue" under New Jersey law, such determination is more properly the task of an executor than of a trustee. Therefore appellees' arguments concerning their bookkeeping system can at best result in a conclusion that it appears quite accurate and methodical. It tells us nothing concerning the issue before us.

■ It is alleged, secondly, on this phase that the activities of the fiduciaries were both of a trustee and executor nature, and thus each must, under the rule laid down in the Steelman opinion, be judged separately. But the only act before us is the sale of the stock described above. Any other conduct in either character of the fiduciaries is not before us and would not affect this act. In re Steelman's Estate, as quoted supra. We have then only the question of whether, under New Jersey law, the sale of stock can be said to be by executors or by trustees. The fiduciaries say they intended to be trustees, but offer nothing in support of this but their mere statement in the District Court. Since their intention, even if true, could have been designed as a tax avoidance scheme, it is not persuasive. Cf. Mertens Law of Federal Income Taxation, Section 12.04. The sale could have been by the fiduciaries as executors, because in New Jersey the power of executors to sell personalty is unlimited. Ryder v. Ryder, 136 N.J.Eq. 279, 284, 41 A. 2d 278. There is thus no local law to buttress the claimed intent. Nor is there a probate court decision before us, as there was in Commissioner v. Crawford's Estate, 3 Cir., 139 F.2d 616, to indicate in which capacity appellees proceeded.

As we see it, appellees' position really amounts to an asserted purpose on their part to sell the stock as trustees. Under local law such a sale by them as trustees is both conceivable and permissible. However, that law does not say that this sale was necessarily such. It permits contrary inferences with equal facility. We, therefore, turn to the applicable federal law and federal tax power as applied to a situation such as this where no substantive rights have been determined under local law.

■ The federal decisions referred to by appellees sustain them no better. Weber v. Commissioner, 2 Cir., 111 F.2d 766, concerned real property. If such property were involved here, the result probably would be the same, since realty descends at once to the heirs or devisees. Brewster v. Gage, supra; In re Boyle's Estate, 133 N.J.Eq. 149, 150, 30 A.2d 827. Bowers v. Slocum, 2 Cir., 20 F.2d 350, was decided under a different statute. Fidelity Union Trust Co. v. Kelly, 3 Cir., 102 F.2d 333, concerned an inter-vivos trust. The numerous opinions cited to show that income is taxed to the person to whose benefit it actually accrues are not applicable to this particular statute; if they were, the statute would be meaningless. And as to the contention that the statute wasn't designed to affect the trust portion of an estate under administration, the reply must be that it was so intended.

■ Article 162-1 of Treasury Regulation 86,[5] which explains this statute, has been unchanged since before the statute, and now has itself the force of law. Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536. The time "actually required" for administration in this case exceeded the one year provided by the New Jersey statute. R.S. 3:26–1, N.J.S.A. 3:26–1. But in making the actual time required the norm, Congress is only prescribing a period for a particular tax.[6] It isn't even going as far as to decide what interpretation is to be placed on local law for purposes of federal taxation, which was sustained in Commissioner v. Tower, 327 U.S. 280, 287, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135; Cf. Thomas Flexible Coupling Co. v. Commissioner of Internal Revenue, 3 Cir., 158 F.2d 828.

■ Appellees nonetheless claim that the regulation in question applies only to circumstances where the duties of trustee are to follow those of the executor. But the regulation itself disproves that assertion, for it specifically provides for determining which office prevails in the event of a conflict, where no persuasive facts indicate a line of demarcation.[7] In this instance it must be construed to require that the executorship and the administration prevail over the trustees and the trusts.[8]

Briefly recapitulating, this appeal, all but bare of facts or even of inferences to serve in place of facts, presents this dispute: The taxpayers allege an intent and a bookkeeping system to prove the vesting of a trust, methods of proof traditionally suspect in contesting a tax. Cf. Schlemmer v. United States, 2 Cir., 94 F.2d 77, 78. State decisions do not help them, quite apart from the unwillingness of federal tax law to stake all on the casuistries of local property rules. Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368. On the other hand, the literal reading of the applicable regulation squarely, and not unreasonably, justifies the position taken by the government.

II.

There are two subsidiary questions in this matter. The first of these concerns certain portions of the affidavit of Earl S. Johnson which supported the application for summary judgment and which, appellant contends, should have been stricken. A motion to that effect was denied by the District Court. The first of these objected to statements reads: "The fiduciaries probated the will and became qualified to administer the estate as executors, and to administer the trusts as trustees, on August 28, 1933. We administered said estate and trusts concurrently from August 28, 1933, until September 30, 1935, when we prepared our account as executors and trustees of our concurrent administration of said estate and trusts."

This involved a legal interpretation of the will and the legal conclusion that the fiduciaries became trustees on August 28, 1933.

Next are the statements that "we considered the estate was complete to all intents

---

[5] "The period of administration or settlement of the estate is the period required by the executor or administrator to perform the ordinary duties pertaining to administration, in particular the collection of assets and the payment of debts and legacies. It is the time actually required for this purpose, whether longer or shorter than the period specified in the local statute for the settlement of estates. If an executor, who is also named as trustee, fails to obtain his discharge as executor, the period of administration continues up to the time when the duties of administration are complete and he actually assumes his duties as trustee, whether pursuant to an order of the court or not. * * *" This regulation has been unchanged since 1919.

[6] Determination of when administration ends has been treated as a fact question. Austin R. Moses, TC Memo Op., Dkt 4862 (Sept. 28, 1945), 4 TCM (CCH) 903; 1 Scott, op. cit. As such, it is surely within a tax court's power.

[7] There is authority that the two offices can function simultaneously under this regulation. Mertens, op. cit., Sec. 36.34. But here there is no factual presentation for determining where executorship ended and trusteeship began, other than the inconclusive indicia previously discussed.

[8] In thus determining the question of when and what administration is in this case, no question of the taxability of the interest, accruing from testator's death, is involved. The right to such income was discussed above. Cf. Estate of Bruner, 3 T.C. 1051, 1057.

and purposes by November 26, 1935;" that "Aside from issuing the checks in payment of the compensation allowed by the November 26, 1935, decree there was nothing else which the executors could do or pay at that time. There was only one remaining item in contemplation. That was the New Jersey estate tax, but nothing could be done about that until after the auditing of the Federal Estate Tax return by the Government was made," that "The administration of the trusts continued after September 30, 1935 and still continues" and that "Each of said decrees (May 23, 1939 and December 14, 1941) allowed compensation to the trustees; * * *." The first of these statements is clearly an opinion. The second is a legal conclusion and a wrong one under Ryder v. Ryder (supra). As to the others, that having to do with the administration of the trusts is a legal conclusion and as to the decrees those documents themselves would be the best evidence.

The next disputed statement is that "In the interim from the decedent's death to February 21, 1935 it was necessary for the trustees to operate the Shu-Milk business." This is again a statement of opinion and whether the business was operated by Messrs. Johnson and Britten as trustees or as executors is a legal conclusion.

The final objections are to the statements "In our concurrent administration of the estate and the trusts, we found it unnecessary to keep separate books, records and bank accounts for each of the three trusts and the estate respectively" and that the appellees liquidated assets "when it appeared profitable or for the best interests of the trust beneficiaries to do so and reinvested the proceeds in investments appropriate to the purposes of the trusts." We think, as contended by the appellants, that these statements include the legal conclusion that title to the residuary estate passed to the trustees immediately.

■ Despite appellees' assertion that the objected to statements were harmless, and in any event are amply supported by evidence, they go to the fundamental issue between the parties. They are all objectionable and should have been stricken under Rule 56(e) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which reads: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." And see State of Washington v. Maricopa County, 9 Cir., 143 F.2d 871, and Walling v. Fairmount Creamery, 8 Cir., 139 F.2d 318, 323.

The second subsidiary problem is the effect upon the balance of the District Court judgment of our above decision holding the gains from the sale of the mentioned stock taxable to the estate. That item constitutes the major part of the judgment on the second cause of action. The judgment of the District Court on the first cause of action is for the amount of a refund to appellees for a 1934 deficiency erroneously assessed with respect to 1934 income paid the cestuis which the government admits that the appellees are entitled to. Included in the judgment on the second cause of action is the same sort of refund for 1935 income so paid. This too is admitted, but whether the government agrees with appellees' figures is not clear. Also apparently contained in the judgment on the second cause of action is the sum of $473 plus interest representing an overcharge for interest on the deficiency assessment. Appellees state that the government concedes that they should be allowed this but there is no mention of it in the government brief nor do we recall it being discussed at the oral argument.

■ The judgment in so far as it relates to the first cause of action will be affirmed. The judgment in so far as it relates to the second cause of action will be reversed and remanded to the District Court solely for the purpose of settling the amount representing the refund to appellees for 1935 income and the amount, if any, of the overcharge of interest on the deficiency assessment and of entering judgment on the second cause of action in favor of the appellees and against the appellant for the total thereof.