32 N.J. Super. 85 (1954)
107 A.2d 827
IN THE MATTER OF THE ESTATE OF MARY ELIZABETH SIMPSON, DECEASED.
Superior Court of New Jersey, Hudson County Court, Probate Division.
Decided September 13, 1954.
Mr. Harold Grouls, attorney for the exceptant.
Mr. William E. Decker and Mr. John I. O'Neil, attorneys for the executors.
DUFFY, J.C.C.
Mary Elizabeth Simpson, a resident of Hudson County, died on November 20, 1952. Her last will and testament was probated in the surrogate's court on December 10, 1952. The executors, Harvey B. Nelson and Sally Ward Howe, now present their final account for approval.
*86 The estate comprised only personal property and consisted of about $6,000 in cash and personal effects with an additional $20,000 (approximately) in value represented by shares of stock in some 30 different companies. Most of the securities have been sold by the executors during the course of their administration except for the following: 100 shares of General Motors, common stock; 10 shares of American Telephone & Telegraph, common stock, and one Western Union Telegraph Company bond, par value $1,000. All are listed on the New York Stock Exchange.
The problem presented here arises out of a special bequest made by the testatrix to her friend, Florence E. Beeton, in the following language:
"* * * I give and bequeath to her the sum of $10,000. My executors are authorized to pay this legacy in kind, that is, in securities that I may be possessed of at the time of my decease, should they think it best to do so."
Pursuant to the authority conveyed, Miss Beeton agreed on January 26, 1953, in writing, to accept 100 shares of American Telephone & Telegraph and 10 shares of General Motors, both common stock, in part payment of her legacy. The agreement did not state a price or value for the transfer of the shares nor did the executors deliver or arrange for the transfer of title at that time. Instead, they retained possession of the certificates of ownership. As recently as March 17 and April 20, 1954, they charged themselves in the account filed with the receipt of dividends from the two companies indicating that title remained in the estate.
An exception to this account has been made by Mae Simpson, who is one of three residuary legatees named in the will. Her objection is directed towards the valuation ascribed by the executors to the securities remaining in their hands, i.e., the inventory value, whereas she contends that they should be valued at their present market price. This point becomes important because the executors have indicated their intention to distribute the described shares to Miss Beeton at the inventory value, pursuant to the agreement, despite the *87 fact that, by enhancement in prices, the shares are worth considerably more today. For example, General Motors sold on the day of testatrix's death at 63 7/8 dollars a share, today it sold for 81. American Telephone closed on the date of death at 157 1/2 dollars a share whereas today it sold for 170 1/4. Thus, the difference in values as reflected by the difference in prices is close to $1,800.
The general rule is stated in 34 C.J.S., Executors and Administrators, § 493, p. 389, that in making distribution in kind the fair market value of the securities at the time of transfer should govern, citing Boston Safe Deposit and Trust Co. v. Reed, 229 Mass. 267, 118 N.E. 333 (Sup. Jud. Ct. 1918) and In re Allen's Estate, 130 Misc. 324, 224 N.Y.S. 312 (Sur. Ct. 1927). In Callahan v. Peltier, 121 Conn. 106, 183 A. 400 (Ct. Err. 1936), where distribution in kind in the form of real estate was being made, the court repeated the above rule and further said, "If the original appraisal does not fairly represent the value at the time of distribution, a revaluation would be proper."
The closest case in New Jersey to the matter under study is In re Brown's Estate, 112 N.J. Eq. 499 (Prerog. Ct. 1933). There the testator's estate consisted mainly of securities which comprised more than 80% of his assets. He had died on July 6, 1930. A depression existed throughout the country at that time and the prices of stocks and bonds depreciated greatly as the hard times continued. Under the terms of the will, three trusts were to be created for the benefit of individual members of his family. The Orphans' Court ruled that certain stocks and bonds be set aside from the corpus for the creation of the trusts at the market value which prevailed for the securities on July 6, 1931. This date, one year after death, was selected because legacies were payable within one year after death under the then existing statute. The prices of the securities had continued to be depressed and were much lower at the date of hearing than existed on July 6, 1931. Those values, in turn, were lower than those prevailing at inventory time. On appeal, Vice-Ordinary Fielder overruled the decision and held that the *88 executors must use the value of the securities as of the date the trust is established. He said:
"The beneficiaries under these trusts have the status of legatees and are entitled to have the full sums nominated in the will paid to their trustees when such payment is made."
It is therefore my opinion in the instant case that the executors must determine the value of the American Telephone and General Motors shares at the current market price when distribution is to be made.
In all other respects, I approve the account. I will sign an appropriate order at which time commissions and counsel fees, including that of Mr. Grouls, will be fixed.