Simon S. Neuman and Helen P. Neuman, et al. [1] v. Commissioner. Neuman v. Commissioner
Docket Nos. 6625-66, 6680-66, 6681-66.
United States Tax Court
T.C. Memo 1969-140; 1969 Tax Ct. Memo LEXIS 164; 28 T.C.M. (CCH) 724; T.C.M. (RIA) 69140; June 30, 1969, Filed *164 Held, the residuary testamentary trusts created under the wills of Harry and Rose Publicker had not come into existence for Federal tax purposes during the taxable years in question and, accordingly, petitioners' claims regarding the ownership of these trusts, and that the income and deduction items attributable thereto should be treated as their individual items of income and deductions, cannot be sustained. Robert J. Spiegel, Girard Tr. Bldg., Philadelphia, Pa., for the petitioners. Albert J. O'Connor, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: Respondent determined deficiencies in the Federal income taxes of petitioners as follows: DocketNo.
Petitioners
Year
Amount
6625-66
Simon S. Neuman and Helen P. Neuman
1960
$ 3,021.18
1961
12,698.42
1962
20,662.61
6680-66
Robert B. Publicker
1959
18,371.97
6681-66
Robert B. Publicker and Vivian Publicker
1960
1,359.18
Petitioners Simon S. Neuman and Helen P. Neuman, aside from disputing the abovedetermined deficiencies applicable to them, claim refunds in the amounts and for the years stated below: 1960
$ 3,021.18
1961
12,698.42
1962
20,662.61
The issues presented for our decision in these consolidated cases are: (1) Whether, during *165 the taxable years in question, the residuary testamentary trusts created under the wills of Harry Publicker and Rose Publicker had come into existence for Federal tax purposes. (2) If so, whether petitioners, Helen P. Neuman and Robert B. Publicker, should be considered as the owners of certain portions of the trusts and should include in the computation of their respective taxable incomes those items of income and deduction which are attributable to their ownership interests in such trusts. Findings of Fact Some of the facts have been stipulated and are so found. The stipulation and exhibits thereto are incorporated herein by this reference. Simon S. Neuman and Helen P. Neuman, the petitioners in Docket No. 6625-66, are husband and wife. At the time of the filing of the petition herein, they resided in Wayne, Pennsylvania. They filed joint Federal income tax returns for the taxable years 1960 to 1962, inclusive, with the district director of internal revenue at Philadelphia, Pennsylvania. Robert B. Publicker and Vivian Publicker are husband and wife. Robert Publicker is the petitioner in Docket No. 6680-66. At the time of the filing of the petition herein, he was a resident of Fort *166 Lauderdale, Florida. He filed an individual income tax return for the taxable year 1959 with the district director of internal revenue at Philadelphia, Pennsylvania, at which time he was not married. Robert and Vivian Publicker are the petitioners in Docket No. 6681-66. At the time of the filing of the petition herein, they were residents of Fort Lauderdale, Florida. They filed a joint income tax return for the taxable year 1960 with the district director of internal revenue at Philadelphia, Pennsylvania. Simon S. Neuman and Vivian Publicker are parties to this proceeding solely by virtue of their having filed joint returns with their respective spouses, Helen Neuman and Robert Publicker. The term "petitioner" or "petitioners" will hereinafter refer solely to Helen Neuman and/or Robert Publicker. Harry Publicker died on March 15, 1951, survived by his wife, Rose Publicker, and three children, Helen P. Neuman, Elva P. 725 Hammer Mangold, and Robert B. Publicker. He left a will executed May 13, 1941, and three codicils thereto executed December 24, 1942, September 6, 1944, and April 6, 1945. The will and codicils were admitted to probate. On March 19, 1951, letters testamentary were *167 issued to Rose Publicker, Helen P. Neuman and S. S. Neuman, the executors named in the codicil dated December 24, 1942. Item Third of the will, as amended in its entirety by the codicil of April 6, 1945, provided, in pertinent part, as follows: Item Third: I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal (after payment therefrom of all estate, succession and inheritance taxes, Federal and State, imposed upon my estate and upon any interest in my estate transferred by this instrument), to my executors and trustees, in trust, nevertheless, to and for the following uses and purposes, subject to the following conditions and provisions: (My two children referred to hereinafter in this Item Third are my daughter, Helen Publicker Neuman, and my son, Robert Bertram Publicker) (A) As to one-third (1/3) thereof, to invest, reinvest and keep invested, and after deducting all necessary legal and other lawful charges therefrom, to distribute the net income at quarter-yearly intervals to my wife, Rose Publicker, for and during the term of her life; and upon and after her death, to distribute such net income at quarter-yearly intervals between my said *168 two children, two-thirds (2/3) thereof to my daughter, Helen, and one-third (1/3) thereof to my son, Robert, for and during the life of the survivor of them (the lawful issue of either such child who is deceased to take the share the parent would have taken if living); and upon the death of such survivor, the trust provided for in this clause (A) shall cease and terminate, and the principal thereof and any then undistributed net income shall be distributed as follows: (1) Two-thirds (2/3) thereof to the lawful issue of my daughter, Helen; and (2) One-third (1/3) thereof to the lawful issue of my son, Robert. (B) As to the remaining two-thirds (2/3) thereof, to invest, reinvest and keep invested, and after deducting all necessary legal and other lawful charges therefrom, to distribute the net income at quarter-yearly intervals between my said two children, two-thirds (2/3) thereof to my daughter, Helen, and one-third (1/3) thereof to my son, Robert, for and during the life of the survivor of them (the lawful issue of either such child who is deceased to take the share the parent would have taken if living); and upon the death of such survivor, the trust provided for in this clause *169 (B) shall cease and terminate, and the principal thereof and any then undistributed net income shall be distributed as follows: (1) Two-thirds (2/3) thereof to the lawful issue of my daughter, Helen; and (2) One-third (1/3) thereof to the lawful issue of my son, Robert. * * * (D) The discretionary power and authority are hereby vested in my executors and trustees to transfer and pay over to either of my said two children, upon his or her written request, notwithstanding anything to the contrary elsewhere contained in this instrument (each such transfer and payment to be charged to the share hereunder in respect of which the child is entitled to receive net income), if and when, and at any time after, the child attains the age of: up to but not exceeding the following designated portion of the share of principal in respect of which the child is entitled to receive net income: twenty-five (25) years twenty per cent. (20%) thirty (30) years an additional fifteen per cent. (15%) thirty-five (35) years an additional twenty per cent. (20%) forty (40) years an additional fifteen per cent. (15%) forty-five (45) years an additional fifteen per cent. (15%) fifty (50) years an additional fifteen *170 per cent. (15%); and the foregoing is to be construed to vest in my executors and trustees the discretionary power and authority to transfer and pay over to either of said two children of mine, upon written request of the child, the portions of principal in respect of which he or she is entitled to receive net income and at the times designated in this clause (D), as will result in the entire balance of such share in respect of which the child is entitled to receive net income being transferred and paid over to him or her when or at any time after the child attains the age of fifty (50) years; provided, however, that my said executors and trustees shall not be obligated or required in any circumstances or under any conditions to make any such transfer or payment of principal to either of said children of mine if for any reason, in the absolute judgment and discretion of my executors and trustees, so doing will not be to the best interests of the 726 trusts herein created or of the child requesting such transfer or payment; and my executors and trustees shall have the widest latitude and powers of discretion in their administration of this clause (D), without accountability or liability *171 of any kind or character on their part for or by reason of any of their decisions, and without being required at any time to assign any reasons for any such decisions. (E) All of the principal and all the income of the share of each beneficiary hereunder shall be free from and clear of the debts, contracts, engagements, liabilities, alienations and anticipations of the beneficiary, and shall not be subject to assignment by him or her, nor subject to attachment, execution, levy or sequestration under any legal, equitable or other process seeking the enforcement of any judgments, liens, or claims of any kind against him or her, either individually, or jointly or collectively with others. Item Fifth of the will, as partially amended by the codicil of December 24, 1942, provided, inter alia, for the appointment of Rose Publicker, Helen P. Neuman, and her husband, S. S. Neuman, as executors of the will and trustees of the residuary trusts created thereunder. On March 21, 1951, Rose Publicker elected to take against the will of Harry Publicker. On May 19, 1955, Rose Publicker died, survived by her three children, Helen P. Neuman, Elva P. Hammer Mangold, and Robert B. Publicker. Rose Publicker *172 left a will executed December 28, 1942, together with two codicils dated November 29, 1944, and April 6, 1945. The will and codicils were admitted to probate. Letters testamentary were issued to Helen P. Neuman and S. S. Neuman on June 29, 1956. Item Second, amended in its entirety by the April 6, 1945 codicil, provided, in pertinent part as follows: Item Second: I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal (after payment therefrom of all estate, succession and inheritance taxes, Federal and State, imposed upon my estate and upon any interest in my estate transferred by this instrument), to my executors and trustees, in trust, nevertheless, to and for the following uses and purposes, subject to the following conditions and provisions: (My two children referred to hereinafter in this Item Second are my daughter, Helen P. Neuman, and my son, Robert B. Publicker; and my grandchildren referred to hereinafter in this Item Second are Stephen H. Neuman, Harry J. Neuman, Priscilla T. Neuman, Roger G. Neuman and A. Bruce Neuman (children of my daughter, Helen) (a) To invest; reinvest and keep the same invested, and to pay over the net income *173 therefrom at semi-annual intervals, for and during the life of the survivor of my daughter, Helen, and her husband, S. S. Neuman, as follows: Four-ninths (4/9) thereof to my daughter, Helen; Two-ninths (2/9) thereof to my son, Robert; and Three-ninths (3/9) thereof to my said five grandchildren, in equal shares; and upon the death of the survivor of my daughter, Helen, and her husband, S. S. Neuman, the trust provided for in this Item Second shall cease and terminate, and the net principal and any then undistributed net income shall be distributed as follows: Two-ninths (2/9) thereof to my son, Robert; Four-ninths (4/9) therof to theof to those of the children of my daughter, Helen, who are then living, in equal shares; and Three-ninths (3/9) thereof to those of my said five grandchildren who are then living, in equal shares (in addition to any shares payable to them under the immediately preceding provision hereof); provided that, upon and after the death of either of my said two children, the share of income and/or principal such deceased child of mine would have taken hereunder if living shall be paid over, in equal shares, to those of his or her children living at the time, and *174 if there are no living children of such deceased child, to the other of my said two children if living at the time, or, if not living, to his or her lawful children living at the time; and upon and after the death of any of my said five grandchildren, the share of income and/or principal such deceased grandchild of mine would have taken hereunder if living shall be paid over, in equal shares, to those of my said five grandchildren living at the time. (B) The discretionary power and authority are hereby vested in my executors and trustees to transfer and pay over to any of the beneficiaries hereunder, upon his or her written request, notwithstanding anything to the contrary elsewhere contained in this instrument (each such transfer and payment to be charged to the share hereunder in respect of which the 727 beneficiary is entitled to receive net income), if and when, and at any time after, the beneficiary attains the age of: up to but not exceeding the following designated portion of the share of principal in respect of which the beneficiary is entitled to receive net income: twenty-five (25) years twenty per cent. (20%) thirty (30) years an additional fifteen per cent. (15%) thirty-five *175 (35) years an additional twenty per cent. (20%) forty (40) years an additional fifteen per cent. (15%) forty-five (45) years an additional fifteen per cent. (15%) fifty (50) years an additional fifteen per cent. (15%); and the foregoing is to be construed to vest in my executors and trustees the discretionary power and authority to transfer and pay over to any of my said beneficiaries, upon written request of the beneficiary, all portions of principal in respect of which he or she is entitled to receive net income and at the times designated in this clause (B), as will result in the entire balance of such share in respect of which the beneficiary is entitled to receive net income being transferred and paid over to him or her when or at any time after the beneficiary attains the age of fifty (50) years; provided, however, that my said executors and trustees shall not be obligated or required in any circumstances or under any conditions to make any such transfer or payment of principal to any of my said beneficiaries if for any reason, in the absolute judgment and discretion of my executors and trustees, so doing will not be to the best interests of the trusts herein created or of the *176 beneficiary requesting such transfer or payment; and my executors and trustees shall have the widest latitude and powers of discretion in their administration of this clause (B), without accountability or liability of any kind or character on their part for or by reason of any of their decisions, and without being required at any time to assign any reasons for any such decisions; but nothing contained in this clause (B) shall be construed to extend the duration of the trusts herein created beyond the time of the death of the survivor of my daughter, Helen, and her husband, S. S. Neuman. (C) All the principal and all the income of the share of each beneficiary hereunder shall be free from and clear of his or her debts, contracts, engagements, liabilities, alienations and anticipations, and shall not be subject to assignment by him or her, nor subject to attachment, execution, levy or sequestration under any legal, equitable or other process seeking the enforcement of any judgment, lien or claim of any kind against him or her, either individually, or jointly or collectively with others. Iten Fourth of the will provided, inter alia, for the appointment of Helen P. Neuman and her husband, *177 S. S. Neuman, as executors of the will and trustees of the residuary trusts created thereunder. Helen P. Neuman was born on January 10, 1904. Robert B. Publicker was born on April 23, 1922. At the end of the taxable year 1962, Simon and Helen Neuman had five children, Steven H., Harry J., Priscilla T., Roger G., and A. Bruce. In the taxable year 1962, Robert and Vivian Publicker had three children, Terry Lee, Brigitte, and Stanley. Substantially the entire principal of both Harry Publicker's and Rose Publicker's estates consisted of the common capital stock of Publicker Industries, Inc. Some of this stock, 5,300 shares valued at approximately $47,000, was distributed in 1960 to Robert Publicker from the Estate of Harry Publicker. Elva P. Mangold, daughter of Harry and Rose Publicker, and the guardian ad litem for her three minor children filed an appeal from the decree of the Register of Wills of Chester County, Pennsylvania, admitting to probate the will and codicils thereto of Harry Publicker. The Petition for Citation filed by Elva P. Mangold, et al., in the Orphans' Court of Chester County, challenged the codicils which disinherited her and her issue on the grounds of undue influence, *178 fraud or duress practiced upon Harry Publicker, and that the decedent lacked testamentary capacity when the said codicils were executed. The Orphans' Court dismissed the undue influence and fraud charges but ruled that a substantial dispute of fact existed regarding testamentary capacity which entitled the contestants to a trial of that issue before a jury. On June 2, 1955, Elva P. Mangold and the guardian ad litem for her three minor children filed a formal caveat against probate of her mother's will with the Register of Wills of Montgomery County. The caveat challenged the will and codicils thereto offered for probate on the grounds of undue influence and fraud, and that the decedent did not have her last principal residence in Montgomery County, but in Philadelphia County. On December 16, 1955, the Orphans' Court of Montgomery County728 dismissed the caveat on the jurisdictional grounds. On further appeal, the Pennsylvania Supreme Court held that the decedent was domiciled in Philadelphia County at the time of her death. In Re Publicker's Estate, 385 Pa. 403, 123 A. 2d 655 (1956). The Register of Wills of Philadelphia County granted letters testamentary to the executors. Elva *179 P. Mangold, et al., took an appeal from probate to the Orphans' Court of Philadelphia County. On March 6, 1953, Elva P. Mangold had instituted an action for slander against Simon S. Neuman in the United States District Court for the Southern District of Florida, Miami Division (Civil Action No. 4847-M). This complaint was amended on three different occasions. On January 10, 1957, Elva brought an action for slander against Simon Neuman and Helen Neuman jointly and severally, in the United States District Court for the Southern District of Florida, Miami Division (Civil Action No. 7359-M). The first slander action went to trial in June 1957, resulting in a disagreement by the jury. On December 12, 1957, an agreement was reached pursuant to which Elva Mangold agreed to the dismissal of the two will contest cases pending in the Orphans' Courts of Chester and Philadelphia Counties and the District Court litigation. This agreement executed by Helen P. Neuman and Simon S. Neuman, "in their capacities as surviving executors and trustees under the will of Harry Publicker, deceased" provided, in part, as follows: * * * [Second] parties shall * * * in their capacity as surviving executors and *180 trustees under the will of Harry Publicker, deceased, pay from the funds of the Estate of Harry Publicker, deceased, to first parties [Elva P. Mangold, et al.], in such proportions and in such way and manner as first shall be approved by any necessary and appropriate court orders, an aggregate amount of five hundred thousand dollars ($500,000.) in cash (to be chargeable against the interest therein of Helen P. Neuman and/or the latter's issue); (emphasis supplied) The probate proceedings in the Orphans' Court of Chester County were settled and the appeal dismissed pursuant to stipulation dated December 16, 1957, and approved by the court on January 16, 1958. The decree of dismissal of the appeal was dated January 20, 1958, in the Orphans' Court of Philadelphia County. On or about January 21, 1958, the Estate of Harry Publicker borrowed $500,000 from the Philadelphia National Bank, which loan was collateralized by 200,000 shares of Publicker stock and was personally guaranteed as to principal and interest by Simon Neuman. The proceeds of this loan were paid to Elva Mangold pursuant to the stipulation dated December 16, 1957. The loan bore interest at the rate of 5 percent per annum *181 which was payable quarterly. The estate paid interest on this loan as follows: Year
Amount Paid
1959
$24,999.99
1960
27,431.52
1961
22,146.91
1962
17,625.01 The estate made a principal payment of $147,500 on August 4, 1961. The interest payments in the years 1959 through 1962 were neither deducted by the estate nor S. S. and Helen P. Neuman on their income tax returns for those years. In the October 9, 1964, Revenue Agent's report on the examination of the estate's income tax returns for 1960, 1961 and 1962, the estate was allowed additional interest deductions of $27,431.52, $22,146.92 and $17,626.01, respectively. The Estate of Harry Publicker filed fiduciary income tax returns for the taxable years 1959 to 1962, inclusive. The Estate of Rose Publicker filed fiduciary income tax returns for the taxable years 1959 to 1962, inclusive. On all of these returns, in response to the question as to whether the return was for an estate, simple trust or complex trust, it was designated that the return was for an estate. Except for the 1961 return for the Estate of Rose Publicker, all the other returns (1959-1962) for both estates designated the fiduciaries, Helen and Simon Neuman, as "executors." The *182 1961 return for the Estate of Rose Publicker designated Helen and Simon Neuman as "trustees." In response to the question as to whether the return was for a trust and, if so, the name and address of the grantor, the answer of "N/A" or "Not applicable" was entered on all the returns. The 1962 returns had an additional question as to whether a final distribution of assets had been made during the year. The 1962 returns for both of the estates answered this question in the negative. All the returns were entitled as being for the Estate of Harry Publicker or the Estate of Rose 729 Publicker; they all were executed by S. S. Neuman as "one of the executors" or "one of the surviving executors" and in every case in which an exemption was claimed it was claimed in the amount of $600 for an estate. In each return for Harry's estate in response to a question as to date of the creation of a trust or date of death "if an estate," the date of Harry's death was given, March 15, 1951; in Rose's fiduciary returns for each year the date of her death, May 19, 1955, was given in answer to similar questions. During all of the years before us the estates of both Harry and Rose remained unsettled with outstanding *183 debts, tax liabilities and other obligations remaining unpaid; at least through 1960 it appeared that the estates might not be able to meet all of their obligations and that all of their assets might be used to discharge estate liabilities. The record does not disclose whether or not all debts and liabilities had been paid by the end of 1962, the last year in issue before us, but large deductions for interest paid on debts of Harry's estate were claimed for 1959, 1960 and 1961 and of Rose's estate for 1959, 1961 and 1962. Up to the time of the trial of these cases the executors of both estates had not filed an accounting, transferred the assets of the estates to themselves as trustees, or been discharged as executors. The deductions properly claimed by the respective estates in the fiduciary income tax returns included, among others, the following: A. Interest paid by the Estate of Harry Publicker to the Estate of Rose Publicker in the amounts of $121,475.16 in 1959, and $65,000 in 1961. The amount paid in 1959 was interest on a debt owed by Harry to Rose prior to his death. The interest had not been paid for many years because the executors had devoted the funds which came into their *184 hands to payments of a more pressing nature. The sum paid in 1961 constituted a portion of the statutory interest on the amount to which Rose was entitled as a result of her taking against Harry's will. B. A legal fee of $50,000 paid to an attorney by the Estate of Harry Publicker in 1961. This represented compensation for legal services rendered to the estate in connection with the administration of the estate and such payment was neither claimed nor allowed as a Federal estate tax deduction. C. An interest payment of $65,000 by the Estate of Rose Publicker on her estate tax liabilities in each of the years 1961 and 1962. For the taxable year 1961, the Estate of Harry Publicker reported a capital gain in the amount of $188,496. In the taxable year 1962 there were no capital gains in either of the estates. The fiduciary returns for both estates reported the following amounts of income and excess of deductions over income which were treated as being directly allocable to the beneficiaries of the residuary trusts created under the wills of Harry Publicker and Rose Publicker. [2]
Year
Estate of Harry Publicker In- come or (Excess of Deductions over Income)
Estate of Rose Publicker In- come or (Excess of Deductions over Income)
1959
[129,176.22)
$ 70,714.04
1960
(8,838.54)
(860.11)
1961
68,646.54
(797.97)
1962
(527.50)
(69,912.42)
*185 On his return for the taxable year 1959, Robert Publicker deducted $43,058.74 as his share of the excess deductions incurred by the Estate of Harry Publicker. The excess deductions were attributable, in substantial part, to the interest ($121,475.16) paid to the Estate of Rose Publicker. Respondent's notice of deficiency to Robert Publicker in regard to the taxable year 1959, provided, inter alia, that the deduction of $43,058.74 in connection with the Estate of Harry Publicker was not allowable under any section of the Internal Revenue Code. [3] He also determined that $15,714.22 of the income from the Estate of Rose Publicker was includable in Robert Publicker's income. In his petition for redetermination of the deficiency determined by respondent for the taxable year 1959, Robert Publicker alleged, inter alia, that during the calendar year 1959 the Estate of Rose Publicker was still in the process of administration and did not make any *186 distributions to Robert Publicker. In their joint return for the taxable year 1960, Robert and Vivian Publicker deducted the amounts of $2,946.18 and $191.13 as Robert's shares of the excess deductions incurred by the Estate of Harry Publicker and the Estate of Rose Publicker, respectively. 730 Respondent's notice of deficiency to Robert and Vivian Publicker in regard to the taxable year 1960, provided, inter alia, that the deductions of $2,946.18 and $191.13 in connection with the Estate of Harry Publicker and the Estate of Rose Publicker, respectively, were not allowable under any section of the Internal Revenue Code. In their joint return for the taxable year 1960, Simon and Helen Neuman deducted the amounts of $5,892.06 and $382.28 as Helen's shares of the excess deductions incurred by the Estate of Harry Publicker and the Estate of Rose Publicker respectively. In their joint return for the taxable year 1961, Simon and Helen Neuman included $45,764.36 (consisting of $125,664 in capital gains and $79,899.64 in deductions) in their taxable income and deducted $354.65 as Helen's shares of the income and excess deductions of the Estate of Harry Publicker and the Estate of Rose Publicker, *187 respectively. In their joint return for the taxable year 1962, Simon and Helen Neuman deducted the amounts of $351.67 and $31,072.19 as Helen's shares of the excess deductions incurred by the Estate of Harry Publicker and the Estate of Rose Publicker, respectively. Respondent's notice of deficiency to Simon and Helen Neuman in regard to the taxable years 1960, 1961 and 1962, provided, inter alia, as follows: 1960 - That the deductions of $5,892.06 and $382.28 in connection with the Estate of Harry Publicker and the Estate of Rose Publicker, respectively, were not allowable under any section of the Internal Revenue Code; and 1961 - that the deductions of $79,899.64 and $354.65 in connection with the Estate of Harry Publicker and the Estate of Rose Publicker, respectively, were not allowable under any section of the Internal Revenue Code; that the long term capital gain of $125,664 in connection with the Estate of Harry Publicker was not includable in income pursuant to section 643(a)(3) of the Internal Revenue Code; and 1962 - that the deductions of $351.67 and $31,072.19 in connection with the Estate of Harry Publicker and the Estate of Rose Publicker, respectively, were not allowable *188 under any section of the Internal Revenue Code. Helen and Simon Neuman filed claims for refund of income taxes for the taxable years 1960 and 1962 and filed a protest for the taxable year 1961. The claims and protest involve the interest paid in these years by the Estate of Harry Publicker to the Philadelphia National Bank upon the $500,000 of indebtedness incurred to pay Elva Mangold in accordance with the agreement of December 12, 1957. They claim that these interest payments by the Estate of Harry Publicker were constructive payments by Helen Neuman and that, accordingly, they should be entitled to the deductions therefrom. Opinion Harry Publicker died on March 15, 1951, survived by his wife, Rose Publicker, and three children, Helen Neuman, Elva Mangold, and Robert Publicker. Rose Publicker died on May 19, 1955. The wills of both Harry and Rose Publicker, as amended by various codicils, contained provisions for the creation of certain trusts which would be comprised of the residue and remainder of their estates after the payment therefrom of all estate, succession and inheritance taxes. The appointed executors and trustees under both wills as amended, not including Rose Publicker, *189 an appointee under her husband's will, were Helen Neuman and her husband, S. S. Neuman. Pursuant to the terms of the trusts created under the will and codicils of Harry Publicker, as effective after the death of Rose Publicker, the trustees were directed to distribute quarterly, two-thirds of the net income of the trusts to Helen Neuman and one-third thereof to Robert Publicker. Upon the death of both Helen and Robert, the trusts were to terminate and the pricipal and remaining undistributed income were to be distributed in a ratio of two-thirds to the lawful issue of Helen Neuman and one-third to the lawful issue of Robert Publicker. Pursuant to the terms of the trust created under the will and codicils of Rose Publicker, the trustees were directed to distribute semiannually four-ninths of the net income to Helen Neuman, two-ninths to Robert Publicker, and three-ninths to five designated grandchildren in equal shares. Upon the death of both Helen and S.S. Neuman, the trust was to terminate and the principal and remaining undistributed income were to be distributed in a ratio of two-ninths to Robert Publicker, four-ninths to the children of Helen Neuman then living, and three-ninths *190 to the survivors of the five designated grandchildren. The testamentary trusts created under both wills contained a further provision which is quoted, in pertinent part, as follows: 731 (B) The discretionary power and authority are hereby vested in my executors and trustees to transfer and pay over to any of the beneficiaries hereunder, upon his or her written request, notwithstanding anything to the contrary elsewhere contained in this instrument (each such transfer and payment to be charged to the share hereunder in respect of which the beneficiary is entitled to receive net income), if and when, and at any time after, the beneficiary attains the age of: up to but not exceeding the following designated portion of the share of principal in respect of which the beneficiary is entitled to receive net income: twenty-five (25) years twenty per cent. (20%) thirty (30) years an additional fifteen per cent. (15%) thirty-five (35) years an additional twenty per cent. (20%) forty (40) years an additional fifteen per cent. (15%) forty-five (45) years an additional fifteen per cent. (15%) fifty (50) years an additional fifteen per cent. (15%); * * * [4] *191 During the taxable year 1959, on April 23, Robert Publicker attained the age of 37. During the taxable year 1960, on January 10, Helen Neuman attained the age of 56. Petitioners contend that for Federal tax purposes they should be treated as the constructive owners of those portions of the corpora in the trusts, created and allegedly existing under the wills of Harry and Rose Publicker, which are attributable to their respective income interests therein. If their initial contention is to be accepted, petitioners further contend that they should be entitled to include in the computation of their respective taxable incomes those items of income and deduction which are attributable to their ownership interests in such trusts. As authority for these contentions, petitioners call our attention to sections 671, [5]678(a)[6] *193 and the principles established in such cases as Helvering v. Clifford, 309 U.S. 331 (1940) and Mallinckrodt v. Nunan, 146 F. 2d 1 (C.A. 8, 1945), certiorari denied 324 U.S. 871 (1945). *192 Petitioners' contentions, more specifically, deal with the trust provision found under both wills which allowed the trustees, in the exercise of their discretion and upon the written request of each petitioner, to distribute to each of the petitioners certain percentages of the corpora attributable to their income interests in such trusts. Under this trust provision, Robert Publicker, who had attained the age of 37 in the taxable year 1959, could make a written request to the trustees in that year to exercise their discretion in distributing to him 55 percent of the corpora in the trusts attributable to his income interests in such trusts (1/3 in those created by the will of Harry Publicker and 2/9 in the one created by the will of Rose Publicker). Helen Neuman, who had attained the age of *194 56 in the taxable year 1960, could make the same request to the trustees in that year for 100 percent of the corpora in the trusts attributable to her income interests in such trusts (2/3 in those created by the will of Harry Publicker and 4/9 in the one created by the will of Rose Publicker). With Helen Neuman and her husband, S. S. Neuman, as the appointed trustees, the petitioners contend that as a practical matter their written requests for the abovedescribed distributions would be more of a matter of form than anything else - the various percentages of corpora, as 732 prescribed by this trust provision, would be theirs for the asking. Respondent, in his notices of deficiency to Robert Publicker, for the taxable years 1959 and 1960, and to Helen Neuman, for the taxable years 1960 through 1962, has determined, primarily, that the excess of deductions over income from the Estates of Harry and Rose Publicker, which were reported and claimed by the petitioners in their respective income tax returns for the above-designated years, were not allowable under any section of the Internal Revenue Code. In his answer to Helen Neuman's petition, respondent denies that there is any proper basis *195 for Helen Neuman's claim that she should be entitled to deduct the interest payments made by the Estate of Harry Publicker to the Philadelphia National Bank during the taxable years 1960 through 1962. It is petitioners' burden, therefore to prove that they are entitled to deduct the excess deductions from both estates and it is Helen Neuman's singular burden to prove that she is entitled to deduct the interest payments made by the Estate of Harry Publicker to the Philadelphia National Bank. If, as we understand them, the sole basis for all their claims is that they are the constructive owners of certain portions of the trusts created under the wills of Harry and Rose Publicker, petitioners must initially prove that these trusts came into existence for Federal tax purposes during the years in question. Petitioners have failed quite markedly to prove this very essential fact to their case and, accordingly, cannot prevail in their ultimate contention that they are entitled to deduct the excess deductions and interest expenses which were incurred by the estates of Harry and Rose Publicker during the taxable years in question. In those situations where a residuary trust is created by a *196 will, the determination of when that trust begins for Federal tax purposes almost invariably depends upon the question of when the administration of the estate, from which the residuary is obtained, comes to and end. See Titusville Trust Co., Coexecutor, 3 B.T.A. 868 (1926); William C. Chick, 7 T.C. 1414 (1946), affd. 166 F. 2d 337 (C.A. 1, 1948), certiorari denied 334 U.S. 845 (1948); United States v. Britten, 161 F. 2d 921 (C.A. 3, 1947). Where the executors, who may also be the appointed trustees, are required to perform certain duties in the administration and settlement of an estate, any income received between the date of the decedent's death and the performance by the executors of their duties as such should be treated as the income of an estate in the process of administration or settlement. Until these duties are performed and the residuary of the estate is distributed to the trustee, it usually cannot be said that the tax life of the trust has commenced. Titusville Trust Co., Coexecutor, supra; United States v. Britten, supra.There are some situations, however, where if the administration of the estate is unduly prolonged the tax life of the trust may commence before such *197 distribution to the trustee. Estate of J. P. Armstrong, 2 T.C. 731 (1943); William C. Chick, supra.Section 1.641(b)-3(a) of the Income Tax Regulations provides some guidelines as to what is meant by the "period of administration or settlement of an estate": The period of administration or settlement is the period actually required by the administrator or executor to perform the ordinary duties of administration, such as the collection of assets and the payment of debts, taxes, legacies, and bequests, whether the period required is longer or shorter than the period specified under the applicable local law for the settlement of estates. For example, where an executor who is also named as trustee under a will fails to obtain his discharge as executor, the period of administration continues only until the duties of administration are complete and he actually assumes his duties as trustee, whether or not pursuant to a court order. However, the period of administration of an estate cannot be unduly prolonged. If the administration of an estate is unreasonably prolonged, the estate is considered terminated for Federal income tax purposes after the expiration of a reasonable period for *198 the performance by the executor of all the duties of administration. Further, an estate will be considered as terminated when all the assets have been distributed except for a reasonable amount which is set aside in good faith for the payment of unascertained or contingent liabilities and expenses (not including a claim by a beneficiary in the capacity of beneficiary). Whether or not an estate is in the process of administration or settlement is a question of fact to be determined from the entire record and we have held earlier regulations of the Commissioner to the same effect to be valid and proper. Estate of J. P. 733 Armstrong, supra. An examination of the relevant facts of record before us here discloses quite amply that the period of administration and settlement for both estates in question had not yet reached any point of termination during the years before us. We find the fiduciaries in 1961 making a payment of $65,000 from the Estate of Harry Publicker to the Estate of Rose Publicker, this sum representing a portion of the statutory interest on the amount to which Rose Publicker was entitled as a result of her taking against the will of Harry Publicker. In that same year *199 a legal fee of $50,000 was paid to an attorney representing compensation for legal services rendered to the Estate of Harry Publicker in connection with the administration thereof. These payments could hardly be described as pertaining to anything other than the administration or settlement of an estate. The 1962 fiduciary return for the Estate of Harry Publicker shows a negligible amount of expenses, $527.50, and no income. This return, as the other returns for prior taxable years, designates that it is for an estate and not for a trust. The fiduciaries are designated as "executors", and the return was signed by S. S. Neuman, "one of the surviving executors." In response to the question as to whether a final distribution of assets had been made during the year, there is a negative answer. There are other indications on the return that it is for an estate and not a trust; in fact all indications point to and specify an estate. In 1962 the Estate of Harry Publicker made an interest payment to the Philadelphia National Bank in the amount of $17,625.01. The interest was paid on a $500,000 loan taken by the estate in order to pay Elva Mangold in accordance with the agreement that she was *200 to dismiss certain will contests against both estates and also dismiss an action for slander against Helen and S. S. Neuman. This 1962 interest payment to the Philadelphia National Bank, as other such payments in the years 1959 through 1961, was not deducted in the fiduciary income tax return. In 1964, however, the estate was allowed additional deductions for those interest payments made to the Philadelphia National Bank in the years 1960 through 1962. While it may not be so clear with respect to the slander suit against Helen and S. S. Neuman, it is clear that the settlement of the will contests instituted by Elva Mangold and the resulting loans and interest payments thereon were part of the administration and settlement of the Estate of Harry Publicker. The agreement with Elva specified that the Neumans, as executors and trustees, would pay the sum of $500,000 in cash from Harry's estate. The fact that the $500,000 was to be charged against Helen's interest does not make this any less an estate matter. Only the $500,000 was to be chargeable against her interest; the agreement with Elva Mangold did not provide that any interest on a loan obtained to pay off the $500,000 would be chargeable *201 against Helen's interest in the estate. Nor, for that matter, does the agreement deal with the necessity of the estate's borrowing the $500,000. The decision to borrow the money and incur interest payments thereon is purely a matter pertaining to the administration of an estate. In both 1961 and 1962 we find the fiduciaries making payments of $65,000 representing the interest due on the estate tax liabilities of the Estate of Rose Publicker. Again we are dealing with payments that are clearly related to the administration of an estate. The 1962 fiduciary return for the Estate of Rose Publicker made the same express designations as had been made on the 1962 fiduciary return for the Estate of Harry Publicker to the effect that the return was for an estate and not a trust and the return was executed by S. S. Neuman, "one of the executors." Up to the time of the trial of these cases the executors of both estates had not filed an accounting, transferred the assets of the estates to themselves as trustees, nor had they been discharged as executors. They had not apparently marshalled all of the assets or paid all of the estate debts. The evidence of record all indicates continuing administration *202 of the estates and petitioners have failed to present evidence to the contrary. The facts summarized above point quite clearly to the conclusion, and we so hold, that the administration of both estates had not yet come to an end and the residuary trusts had not yet come into existence for Federal tax purposes as of and through the taxable year 1962. The sole basis of petitioners' claims, regarding the inclusion and deduction by them of certain percentages of the income and expense items of both estates, is that they are the constructive owners of various 734 portions of the residuary trusts created and allegedly existing under the wills of Harry and Rose Publicker. In view of the conclusion that the trusts in question did not come into existence for Federal tax purposes during the taxable years in question, petitioners' claims regarding the ownership of these trusts, and the income and deduction items attributable thereto, cannot be sustained. Accordingly, we hold that petitioners were not entitled to deduct the excess deductions incurred by both estates during the taxable years before us and that Helen Neuman was not entitled to deduct the interest payments made by the Estate of Harry *203 Publicker to the Philadelphia National Bank during the years 1960 through 1962. Another issue, not discussed heretofore, was raised by respondent's determination that $125,664 of the capital gains realized by the Estate of Harry Publicker in the taxable year 1961 was not includable in Helen Neuman's taxable income for such year. Petitioner Neuman's contentions on this matter are the same as those regarding the excess deductions and interest payments, namely that she was the constructive owner of certain portions of the trusts provided for under both wills. Being dependent for its disposition upon the resolution of whether the trusts had come into existence for Federal tax purposes, which has been resolved in the negative, respondent's determination that $125,664 of the capital gains realized by the Estate of Harry Publicker in the taxable year 1961 is not includable in Helen Neuman's taxable income for such year, will, accordingly, be sustained. Neither party, either at trial or on brief, has discussed respondent's determination that $15,714.22 of the income from the Estate of Rose Publicker during the taxable year 1959 was includable in Robert Publicker's taxable income for such year. *204 We have already held that both estates were still in the process of administration up to and through the taxable year 1962. Accordingly, we must sustain Robert Publicker's contention, in his petition for the taxable year 1959, that the Estate of Rose Publicker was still in the process of administration during such year. The record discloses that the earliest distribution made to Robert Publicker occurred in 1960. There being no provision in the will of Rose Publicker for any income to be distributable to any beneficiary prior to the end of the administration of her estate, nor any actual distribution to Robert Publicker during 1959, we, accordingly, cannot sustain respondent's determination that any of the income from such estate was includable in Robert Publicker's income for the taxable year 1959. Even if we were able to say that the trusts had somehow come into a kind of dual existence with the estates, we would still be constrained to find that the various major expenses incurred, which caused the excess deductions in question, were allocable to the income of the estates and not that of the trusts. The ownership of certain portions of the trusts, if we were to so hold, would be *205 of no avail to petitioners since the major expenses which they make claim to would not be allocable to their ownership interests in such trusts. At trial, both in opening statement and in examination of witnesses, petitioners' counsel made repeated references to estates not trusts, and all of the evidence and testimony likewise almost invariably refers to estates. Petitioners' brief sometimes makes reference to the constructive ownership of the assets in the estates, as contrasted with trusts. Whether these references to estates instead of trusts were inadvertent or not, there is no statutory authority or case precedent cited or relied on by petitioners that provides the slightest basis for the conclusion that interests in an estate are the subject of constructive ownership during administration so that the beneficial owners are taxable on the estate's income and entitled to claim a proportionate part of the estate's deductions. [7] The statutory provisions and decided cases upon which petitioners rely apply only to constructive or substantial ownership of trusts, not estates. This, of course, is not to say that the income and deductions of an estate can never be passed through to the *206 beneficiaries of such estate. As it applies to estates, section 662(a) provides, in essence, that the beneficiaries shall include in their gross incomes, subject to a certain limitation, those amounts 735 required to be distributed currently and all other amounts properly paid, credited or required to be distributed by the estate to the beneficiaries. The limitation on the amount to be included is represented by the amount of distributable net income which is defined by section 643(a). It is enough to say for the purposes of this case, without going into the technical details of sections 643(a) and 662(a), that section 662(a), in its incorporation of distributable net income as a limitation and measure of the amount of income includable in the beneficiaries' incomes, does not allow an excess of deductions over income to pass-through to such beneficiaries. Exceptions to the above rule are to be *207 found in sections 642(e), (f) and (h) which, in effect, provide, in certain situations, that all or a part of a particular type of deduction will be allocated to the beneficiaries without being subject to the provisions of section 662(a) and its incorporation of distributable net income as a limitation and measuring device. Sections 642(e), regarding depreciation and depletion deductions, and section 642(f), regarding the amortization of emergency or grain storage facilities, are obviously not applicable to the facts of the case before us. Section 642(h), where certain loss carryovers and excess deductions are allowed as deductions to the beneficiaries when the estate is in its last year of administration, does bear some relevance to our facts. We have, however, already held that both estates were still in the process of administration up to and through the last taxable year in question, 1962, and accordingly, we conclude that section 642(h) would not allow petitioners to deduct any of the excess deductions incurred by both estates during the taxable years in question. To reflect any required adjustments. Decisions will be entered under Rule 50. Footnotes
1. Cases of the following petitioners are consolidated herewith: Robert B. Publicker, Docket No. 6680-66, and Robert B. Publicker and Vivian Publicker, Docket No. 6681 - 66.↩
2. Certain items of income in 1959 and 1960 were not treated as being directly allocable to the beneficiaries and, accordingly, were included in the taxable incomes of the two estates.↩
3. All references are to the Internal Revenue Code of 1954, as amended.↩
4. Other provisions found in both wills which may effect some minor qualification to the above descriptions of the trusts created thereunder are omitted for their lack of any direct relevance to the disposition of the issues before us.
5. SEC. 671. TRUST INCOME, DEDUCTIONS, AND CREDITS ATTRIBUTABLE TO GRANTORS AND OTHERS AS SUBSTANTIAL OWNERS. Where it is specified in this subpart that the grantor or another person shall be treated as the owner of any portion of a trust, there shall then be included in computing the taxable income and credits of the grantor or the other person those items of income, deductions, and credits against tax of the trust which are attributable to that portion of the trust to the extent that such items would be taken into account under this chapter in computing taxable income or credits against the tax of an individual. Any remaining portion of the trust shall be subject to subparts A through D. No items of a trust shall be included in computing the taxable income and credits of the grantor or of any other person solely on the grounds of his dominion and control over the trust under section 61 (relating to definition of gross income) or any other provision of this title, except as specified in this subpart. ↩
6. SEC. 678. PERSON OTHER THAN GRANTOR TREATED AS SUBSTANTIAL OWNER. (a) General Rule. - A person other than the grantor shall be treated as the owner of any portion of a trust with respect to which: (1) such person has a power exercisable solely by himself to vest the corpus or the income therefrom in himself, or (2) such person has previously partially released or otherwise modified such a power and after the release or modification retains such control as would, within the principles of sections 671 to 677↩, inclusive, subject a grantor of a trust to treatment as the owner thereof.
7. Real properties may not be considered part of the estate and income and deduction items therefrom are treated as being directly allocable to the heirs or devisees of the decedent. See Guaranty Trust Co. of New York, Executor, 30 B.T.A. 314↩ (1934). Such is not the situation in the instant case.